UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x
GREAT NORTHERN INSURANCE
COMPANY, INC.,

                Plaintiff,

-against-

BLUE ANCHOR LINE, BLUE ANCHOR
LINE, A DIVISION OF TRANSPAC
CONTAINER SYSTEM LTD., KUEHNE
& NAGEL, INC., KUEHNE & NAGEL S.A.
KUEHNE & NAGEL INC., HANJIN
SHIPPING CO., LTD., CONTAINER PORT
GROUP, INC.

                Defendants.
---------------------------------------------------------x

ECF Case
08 CV 03308 (SHS)(GWG)

DEFENDANTS' MEMORANDUM
IN SUPPORT OF THEIR MOTION
TO DISMISS THE CLAIMS
AGAINST THEM ON GROUND
OF A MANDATORY AND
EXCLUSIVE FOREIGN FORUM
SELECTION AGREEMENT

## INTRODUCTION

This memorandum of law submitted on behalf of defendants BLUE ANCHOR LINE, BLUE ANCHOR LINE, A DIVISION OF TRANSPAC CONTAINER SYSTEM LTD., KUEHNE & NAGEL, INC. and KUEHNE & NAGEL S.A. in support of their motion to dismiss the claims against them on the grounds of a mandatory and exclusive forum selection agreement.

## NATURE OF THE CASE

Plaintiff sues under 28 U.S.C. 1331 for damages for cargo carried by sea from Spain to the United States where it was transported inland.

In its complaint plaintiff alleges that:

1.    Plaintiff is the subrogated insurer for Pannotia Vineyards, LLC. The damage was caused by heat to wine moved in two containers transported by ship from Barcelona, Spain to New York.

2. Defendant Blue Anchor Line issued three bills of lading for the shipments on or about June 22, 2006.

3. The transport was actually carrier aboard a ship for defendant Hanjin Shipping Co., Ltd.

4. The Blue Anchor Line bills of lading were issued to the shipper, while the bills of lading issued by co-defendant Hanjin are not relevant to this motion.

5. From New York the wine was carried by defendant Container Port Group, Inc., some to Mansfield, Massachusetts and the rest to Elizabeth, New Jersey.

6. The shipments arrived at the place of business of the consignees, having sustained damage in the amount of $60,000.

7. The defendants' liability is based upon the failure to deliver the cargo in good order and condition.

8. The cause of the damages is the defendants' failure to comply with their obligation to take steps to protect the cargo, in this case exposure of the wines to extremes of temperature during the transport, including an obligation to provide lined and/or insulated containers for transport.

9. All of the defendants provided services as common carriers for hire, including, as receiving and delivering carriers, and assumed the responsibility for the transportation of the shipment from the place of receipt to the place of final delivery.

BASIS FOR THE FORUM MOTION

Defendants' BLUE ANCHOR LINE, BLUE ANCHOR LINE, A DIVISION OF TRANSPAC CONTAINER SYSTEM LTD., KUEHNE & NAGEL, INC. and KUEHNE & NAGEL S.A. answer to the complaint pleads the existence of a mandatory Hong Kong

forum selection clause in the Blue Anchor Line bills of lading sued on. Exhibit D Article 4 reads as follows:

> **4. Law and Jurisdiction**
> 4.1   Disputes arising under this Document shall be determined by the courts and subject to Clause 17 of the Document in accordance with the laws of Hong Kong.
> 4.2   No proceedings may be brought before other courts unless the parties expressly agree on both the choice of another court or arbitration tribunal and the law to be then applicable.

The foregoing terms and conditions apply as well to Kuehne & Nagel S.A. and Kuehne & Nagel, Inc. pursuant to §17(c), which provides as follows

> 17(c) **Exemptions and Limitations of Servants, Agents, Stevedores, Etc.**
> It is understood that the Carrier shall require and utilize the services of others in the performance of its undertakings with respect to the Goods transported or to be transported as described hereon and it is expressly agreed between the Merchant and the Carrier that each and every Participating Carriers, master, officer, servant, independent contractor, stevedore, tower, etc. engaged or employed by the Carrier in connection with the carriage hereunder shall be a beneficiary of this contract and shall be entitled to all exemptions from and limitation of liability which the Carrier has under this Express Cargo Bill and the applicable law, the Carrier entering into this contract and agreement not only on its behalf but also as agent and trustee of each person and contractor described above, all of whom shall be deemed to be a party to this agreement to the extent of being afforded and entitled to the exemptions, immunities and limitations of liability accorded to the Carrier hereunder.
>
> The Merchant undertakes that no claim shall be made against any Participating Carrier against any servant, agent or subcontractor of the Carrier of against any vessel, her owner or operator, nor against other servants, agents or contractors as mentioned before which imposes or attempts to impose upon any of them any liability whatsoever in connection with the Goods and, if any such claim should nevertheless be made to indemnify the Carrier against all consequences thereof. Without prejudice to the foregoing, every such person shall have the benefit of all provisions herein, as if such provisions were expressly for their benefit. In entering into this contract Carrier to the extent of those provisions, does so not only on its behalf but also as agent and trustee for such persons.

STATUS OF THE CASE

This action was filed on April 2, 2008. The answer of the within defendants was filed on or about May 23, 2008.

Other than Rule 26(a) Disclosures, no motions or discovery proceedings have been had. Paragraph Sixth of the within defendants answer states that the Blue Anchor Line bill of lading requires that dispute between the parties be determined by the courts and in accordance with the laws of a foreign country, etc.

ARGUMENT

1. THE CHOICE OF FORUM IS MANDATORY AND EXCLUSIVE. Under the terms and conditions of the Blue Anchor Line's bills of lading choice of forum is mandatory. By stating that disputes "shall be determined by the courts and subject to Clause 17 of this document in accordance with the laws of Hong Kong", the provisions are imperative and mandatory. *Salis v. Am. Exp. Lines,* 2008 U.S. Dist. LEXIS 36206(S.D.N.Y. Apr. 30, 2008); *Talatala v. Nippon Yusen Kaisha Corp.,* 974 F.Supp. 1321, 1325 (D.Haw. 1997); *LPR SRL. v. Challenger Overseas, LLC.* 2000 A.M.C. 2887, 2889-90 (S.D.N.Y. 2000). The Blue Anchor Line is also made exclusive in its reference to "no proceedings may be brought before other courts…"

2. PLAINTIFF'S CLAIMS ARISE UNDER THE BILL OF LADING: The Blue Anchor Line bills of lading are issued as the "contract of carriage" (¶1.1) and in ¶2.it as carrier "undertakes to perform or procure the performance of the entire transport from the place at which the Goods are taken in charge (place of acceptance) to the place designated for delivery in this Express Cargo Bill and assumes liability as set out in these conditions."

3.  THE CLAUSE APPLIES TO THE NON-CONTRACT THEORIES OF RECOVERY: Plaintiff cannot avoid the Blue Anchor Line forum clause by pleading alternative theories sound in tort rather than contract. *Roby v. Corp. of Lloyd's,* 996 F.2d 1353, 1363 (2d Cir. N.Y. 1993) cert. den. 510 U.S. 945 (1993); *Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd.,* 709 F.2d 190, 203 (3d Cir. N.J. 1983) cert. den. 464 U.S. 938 (1983); *Kelso Enters. v. M/V Wisida Frost,* 8 F.Supp.2d 1197, 1206-07 (C.D. Cal. 1998)); *Challenger,* supra, 2000 A.M.C. at 2889 – 90; *Bison Pulp & Paper Ltd. v. M/V PERGAMOS,* 1996 A.M.C. 2022, 2041 (S.D.N.Y. 1995).

4.  THE CLAUSE IS PRESUMPTIVELY VALID: The Blue Anchor Line bill of lading choice of forum provision is presumptively valid and may be overcome only upon a factual showing (1) of fraud or overreach (2) that litigation in the chosen forum is so gravely inconvenient that for all practical purposes the party opposing the motion will for all practical purposes be denied its day in court (3) that fundamental unfairness of the selected forum may deprive a plaintiff of a remedy; or (4) the clause contravenes a strong public policy of the forum state. See, *Phillips v. Audio Active Ltd.,* 494 F.3d 378, 383-84 (2d Cir. N.Y. 2007). None of those factors is present here. Specifically, plaintiff's complaint does not allege anything fraudulent; plaintiff sues on the bills of lading, thereby accepting its terms; Hong Kong is neither a gravely inconvenient or fundamentally unfair forum; bills of lading choice of forum selection clauses, in general contravene no strong U.S. public policy. To the contrary, the enforcement is favored, see *Vimar Seguros y Reaseguros S.A. v. M/V SKY REEFER,* 515 U.S. 528 (1995).

## DEFENDANTS KUEHNE & NAGEL S.A. AND KUEHNE & NAGEL, INC. ARE COVERED BY THE HIMILAYA CLAUSE

Paragraph 17(C) of the Blue Anchor Line bills of lading extends its benefits to any participating carrier, servant, agent or subcontractor of the carrier, the non-vessel operating common carrier being Blue Anchor Line. In this case, Kuehne & Nagel S.A. is a Spanish corporation without any offices, employees, bank accounts or other indicia of doing business in the United States. Its role in the within matter was as an agent for Blue Anchor Line in Spain to cause the issuance of the bills of lading on its behalf. If plaintiff believes it has claims against Kuehne & Nagel S.A. for failing to protect the cargo from exposure to extremes of temperature during transport, those tort claims exist in Spain where the wines were packed and loaded in the sealed containers by plaintiff.

Kuehne & Nagel, Inc. served as freight forwarder after the goods had been delivered by sea from Spain to New York. It was not a carrier but at most an agent for Blue Anchor Line to help arrange for an independent third party to deliver the cargo from New York to their place of destination in Massachusetts and New Jersey. The actual transport was, according to the complaint, effected by defendant, Container Port Group.

For the foregoing reasons, defendants Kuehne & Nagel S.A. and Kuehne & Nagel, Inc. are covered and benefitted by Article 17(C) of the Blue Anchor Line bills of lading terms and conditions as that the claims against them are to be determined in Hong Kong. The clause in question is commonly referred to as a Himilaya clause.

CONCLUSION

The motion should be granted.

Dated: New York, New York
July 28, 2008

Respectfully submitted,

_____
Ernest H. Gelman (EHG 4748)
Attorney for Defendants
BLUE ANCHOR LINE, BLUE ANCHOR
LINE, A DIVISION OF TRANSPAC
CONTAINER SYSTEM LTD., KUEHNE
& NAGEL, INC., KUEHNE & NAGEL
S.A. and KUEHNE & NAGEL, INC.
350 Fifth Avenue, Suite 4908
New York, NY 10118
Telephone: (212) 332-2345
Fax: (212) 332-8301
e-mail: egelman@gelmanesq.com

To:  David L. Mazaroli, Esq.
     Attorney for Plaintiff
     11 Park Place, Suite 1214
     New York, New York 10007

     Keith W. Heard, Esq.
     Burke & Parsons
     Attorneys for Hanjin Shipping Co., Ltd.
     100 Park Avenue
     New York, New York 10017